E-FILED
Monday, 01 May, 2017  11:37:00 AM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | | |
|---|---|---|
| CORINNA CLENDENEN, | ) | |
| on behalf of herself and others | ) | |
| similarly situated, | ) | |
| | ) | |
|     Plaintiffs, | ) | |
| | ) | Case no.: 1:17-cv-1045-JBM-JEH |
| vs. | ) | |
| | ) | |
| STEAK N SHAKE OPERATIONS, INC. | ) | |
| (an Indiana Corporation) | ) | |
| | ) | |
|     Defendant. | ) | |

## MEMORANDUM IN SUPPORT OF
## PLAINTIFF'S MOTION FOR CONDITIONAL CLASS CERTIFICATION

COMES NOW the Plaintiff, on behalf of herself and others similarly situated, and hereby sets forth the following memorandum in support of Plaintiff's Motion for Conditional Class Certification.

## I.       Introduction

The Defendant Steak N Shake Operations, Inc. ("SnS") operates retail restaurants across the country. These restaurants are broken down into several Group Markets. At each of these restaurants, SnS employees a General Manager, Restaurant Manager (not at all locations), and usually more than one Manager. All of these positions are treated by SnS as exempt from overtime under the Fair Labor Standards Act, 29 U.S.C. §201 *et seq*. ("FLSA"). The Plaintiff Clenden worked as a Manager at various restaurants in the Peoria, Illinois area. She is requesting that this Court grant conditional certification so notice can be sent under § 216(b) of

the FLSA to all persons who have worked as Managers within the past three years in all Group

Markets, but excluding the St. Louis Group Market.[1]

The Plaintiff presents testimony from nine other Managers who worked in Illinois,

Tennessee, Kentucky, Texas, Ohio, and Florida as SnS Managers.  All testify to performing the

same duties whereby the vast majority of their time was spent doing the same work as overtime

eligible hourly employees.  Like Plaintiff, all declerants had limited job authority, were subject

to companywide SnS polices that controlled every aspect of the restaurant's operation, worked

well in excess of forty hours per week, and were denied overtime pay.  SnS has a uniform job

description for all Managers, a companywide policy of denying overtime pay to Managers, and a

centralized human resource department.

This Court is familiar with the very lenient standard at this conditional certificaition

stage.  *See North v. Bd. of Trustees of IL State Univ.*, 676 F. Supp. 2d 690 (C.D. Ill. 2009)

(citations omitted) (McDade, J.).  Given the amount of supporting testimony, and SnS's

admission that all Managers perform the same job duties and are denied overtime pay, the

"modest factual" showing of Managers being subject to the same allegedly illegal policy is easily

met.  For this reason, the Court should grant conditional certification, approve the class notice set

forth herein, and require SnS to produce the requested contact information.

## II.        Statement of "Modest Factual Showing"

In seeking conditional class certification under § 216(b), after the Plaintiff presents a

"modest factual showing that the members of the proposed collective action are similarly

situated is met, the court conditionally certifies the collective action, and may order that notice

---

[1] The Plaintiff is excluding Managers in the St. Louis Group Market because their FLSA overtime claims are being addressed in a separate action: *Drake, et al. v. Steak N Shake Operations, Inc.*, E.D.Mo. case no.: 4:14-cv-1535.  In *Drake*, the FLSA collective action is exclusively limited to Managers in the St. Louis Group Market, and Judge Ross in that case has excluded Managers outside that Market Group from participating.

be sent to the other members of the proposed collective action, so that they will have the opportunity to opt-in." *North*, 676 F. Supp. 2d at 694.  The Plaintiff sets forth more than the required "modest" factual showing that all Managers are "similarly situated."

1.       Defendant Steak N Shake Operations, Inc. ("Steak N Shake") is an Indiana corporation registered to do business and in good standing in the state of Illinois.  Not including restaurant establishments franchised by Defendant to franchisees, Defendant operates over 400 corporate owned retail restaurant locations throughout the country.  According to a recent annual statement, Defendant operates 63 corporate owned restaurants in the state of Illinois including in Peoria, Illinois.  (Complaint, ¶¶ 6, 14).

2.       Defendant's retail restaurants are modeled to be staffed with the following positions that are treated as exempt from overtime within the past three years (listed in their respective alleged chain of supervision): "General Manager," "Restaurant Manager", and one or more "Managers."[2]  (Complaint, ¶ 15).

3.       In addition to these overtime exempt positions, Defendant also employs numerous overtime eligible, or nonexempt, persons at each retail restaurant such as grillers, fryers, sandwich dressers, dishwashers, fountain drink operators, operations supervisors, and like positions; and servers and production trainers (hereafter collectively referred to as "hourly workers").  (Complaint, ¶ 16).

4.       Regardless of location, Defendant has a uniform job description for all Managers. Under this description, this position is uniformly classified as exempt from overtime pay under the FLSA regardless of location.  (**Exhibit A**).

---

[2] Plaintiff has reason to believe that for a brief period of time between November 2016 and February 2017, Defendant reclassified Restaurant Managers and Managers as nonexempt under the FLSA and paid them overtime.

5.      Regardless of location, Managers' terms and conditions of employment are covered by the same employee handbook and serviced by the same central human resource department.  (**Exhibit B**).

6.      Plaintiff Corrina Clendenen worked as a Manager for SnS from approximately 2012 through October 2014 at two retail restaurants located in Peoria, Illinois, but also worked in many others in the area on a temporary basis.  (**Exhibit C**, ¶ 2).  As a Manager, Clendenen was very familiar with all the job duties of the restaurant's hourly employees.  (*Id.* at ¶ 4).  Clendenen spent on average 80% of her time performing the same job duties as these hourly employees.  (*Id.* at ¶ 5).  Her performing these hourly job duties were essential for the success of the restaurant.  (*Id.* at ¶ 6).   She did not have the authority to hire or fire employees, and only played a limited role in interviews.  (*Id.* at ¶ 8).  She had no role in making any determinations regarding other employees' pay, raises, benefits, or promotions.  (*Id.* at ¶ 9).  As a Manager, she could not deviate from any of SnS's policies or procedures.  (*Id.* at ¶ 11).  On average, she worked 55 hours per week without receiving overtime pay.  (*Id.* at ¶ 13).  While working at various SnS locations, Clendenen interacted with other Managers, and from her observations and conversations they also spent the majority of their time performing hourly employee work, had similar experiences on hours worked, and had similar limited responsibilities.  (*Id.* at ¶ 15).

7.      Corey Brown worked as a Manager for SnS from approximately June 2000 through November 2016 at retail restaurants located in Tennessee.  (**Exhibit D**, ¶ 2).  As a Manager, Brown was very familiar with all the job duties of the restaurant's hourly employees.  (*Id.* at ¶ 4).  Brown spent most of his time performing the same job duties as these hourly employees.  (*Id.* at ¶ 5).  His performing these hourly job duties were essential for the success of the restaurant.  (*Id.* at ¶ 6).   He did not have the authority to hire or fire employees, and only

4

played a limited role in interviews.  (*Id.* at ¶ 8).  He had no role in making any determinations regarding other employees' pay, raises, benefits, or promotions.  (*Id.* at ¶ 9).  As a Manager, he could not deviate from any of SnS's policies or procedures.  (*Id.* at ¶ 11).  On average, he worked 50-55 hours per week without receiving overtime pay.  (*Id.* at ¶ 13).  While working at various SnS locations, Brown interacted with other Managers, and from his observations and conversations they also spent the majority of their time performing hourly employee work, had similar experiences on hours worked, and had similar limited responsibilities.  (*Id.* at ¶ 15).

8.      Paul Holzheu III worked as a Manager for SnS prior to December 2014 at retail restaurants located in Texas.[3]  (**Exhibit E**, ¶ 2).  As a Manager, Holzheu was very familiar with all the job duties of the restaurant's hourly employees.  (*Id.* at ¶ 4).  Holzheu spent on average 70% of his time performing the same job duties as these hourly employees.  (*Id.* at ¶ 5).  His performing these hourly job duties were essential for the success of the restaurant.  (*Id.* at ¶ 6).  He did not have the authority to hire or fire employees, and only played a limited role in interviews.  (*Id.* at ¶ 8).  He had no role in making any determinations regarding other employees' pay, raises, benefits, or promotions.  (*Id.* at ¶ 9).  As a Manager, he could not deviate from any of SnS's policies or procedures.  (*Id.* at ¶ 11).  On average, he worked 55 hours per week without receiving overtime pay.  (*Id.* at ¶ 13).  While working at various SnS locations, Holzheu interacted with other Managers, and from his observations and conversations they also spent the majority of their time performing hourly employee work, had similar experiences on hours worked, and had similar limited responsibilities.  (*Id.* at ¶ 15).

---

[3] Holzheu and declarant Orry Combs (*see* ¶ 13, *infra*) are both opt-in Plaintiffs in the case of *Drake, et al. v. Steak N Shake Operations, Inc.*, E.D.Mo. case no.: 4:14-cv-1535.  Both of these persons worked as Managers not only in SnS's St. Louis Group Market (which is the only group market covered in the *Drake* collective action claim under the FSLA), but they also worked in markets outside the St. Louis Group Market.  As the Court will see, these two declarant's testimony in this matter only covers their experiences outside the St. Louis Group Market.  These two persons cannot participate in this matter since they are asserting the same claims in *Drake*.  However, their testimony is relevant pertaining to their experiences outside the St. Louis Group Market.

9.      Catherine Jett worked as a Manager for SnS from approximately June 2006 through July 2015 at retail restaurants located in Tennessee.  (**Exhibit F**, ¶ 2).  As a Manager, Jett was very familiar with all the job duties of the restaurant's hourly employees.  (*Id.* at ¶ 4). Jett spent on average 80% of her time performing the same job duties as these hourly employees. (*Id.* at ¶ 5).  Her performing these hourly job duties were essential for the success of the restaurant.  (*Id.* at ¶ 6).   She did not have the authority to hire or fire employees, and only played a limited role in interviews.  (*Id.* at ¶ 8).  She had no role in making any determinations regarding other employees' pay, raises, benefits, or promotions.  (*Id.* at ¶ 9).  As a Manager, she could not deviate from any of SnS's policies or procedures.  (*Id.* at ¶ 11).  On average, she worked 80 hours per week without receiving overtime pay.  (*Id.* at ¶ 13).  While working at various SnS locations, Jett interacted with other Managers, and from her observations and conversations they also spent the majority of their time performing hourly employee work, had similar experiences on hours worked, and had similar limited responsibilities.  (*Id.* at ¶ 15).

10.     Sarah Lohnes worked as a Manager for SnS from April 2014 through April 2016 at a retail restaurants located in East Peoria, Illinois.  (**Exhibit G**, ¶ 2).  As a Manager, Lohnes was very familiar with all the job duties of the restaurant's hourly employees.  (*Id.* at ¶ 4).  Lohnes spent on average 95% of her time performing the same job duties as these hourly employees.  (*Id.* at ¶ 5).  Her performing these hourly job duties were essential for the success of the restaurant.  (*Id.* at ¶ 6).  She did not have the authority to hire or fire employees, and only played a limited role in interviews.  (*Id.* at ¶ 8).  She had no role in making any determinations regarding other employees' pay, raises, benefits, or promotions.  (*Id.* at ¶ 9).  As a Manager, she could not deviate from any of SnS's policies or procedures.  (*Id.* at ¶ 11).  On average, she worked 70-74 hours per week without receiving overtime pay.  (*Id.* at ¶ 13).  While working at

her SnS location, Lohnes interacted with other Managers, and from her observations and conversations they also spent the majority of their time performing hourly employee work, had similar experiences on hours worked, and had similar limited responsibilities.  (*Id.* at ¶ 15).

11.     Lucinda Moon-Leezer worked as a Manager for SnS from September 2015 through July 2016 at a retail restaurant located in Peoria, Illinois.  (**Exhibit H**, ¶ 2).  As a Manager, Moon-Leezer was very familiar with all the job duties of the restaurant's hourly employees.  (*Id.* at ¶ 4).  Moon-Leezer spent on average 90% of her time performing the same job duties as these hourly employees.  (*Id.* at ¶ 5).  Her performing these hourly job duties were essential for the success of the restaurant.  (*Id.* at ¶ 6).  She did not have the authority to hire or fire employees, and only played a limited role in interviews.  (*Id.* at ¶ 8).  She had no role in making any determinations regarding other employees' pay, raises, benefits, or promotions.  (*Id.* at ¶ 9).  As a Manager, she could not deviate from any of SnS's policies or procedures.  (*Id.* at ¶ 11).  On average, she worked 60-65 hours per week without receiving overtime pay.  (*Id.* at ¶ 13).  While working at her SnS location, Moon-Leezer interacted with other Managers, and from her observations and conversations they also spent the majority of their time performing hourly employee work, had similar experiences on hours worked, and had similar limited responsibilities.  (*Id.* at ¶ 15).

12.     Theresa Tipton worked as a Manager for SnS from approximately 2012 through October 2016 at retail restaurants located in East Peoria and Peoria, Illinois.  (**Exhibit I**, ¶ 2).  As a Manager, Tipton was very familiar with all the job duties of the restaurant's hourly employees.  (*Id.* at ¶ 4).  Tipton spent on average 90% of her time performing the same job duties as these hourly employees.  (*Id.* at ¶ 5).  Her performing these hourly job duties were essential for the success of the restaurant.  (*Id.* at ¶ 6).  She did not have the authority to hire or fire employees,

and only played a limited role in interviews. (*Id.* at ¶ 8). She had no role in making any determinations regarding other employees' pay, raises, benefits, or promotions. (*Id.* at ¶ 9). As a Manager, she could not deviate from any of SnS's policies or procedures. (*Id.* at ¶ 11). On average, she worked 60-65 hours per week without receiving overtime pay. (*Id.* at ¶ 13). While working at her SnS location, Tipton interacted with other Managers, and from her observations and conversations they also spent the majority of their time performing hourly employee work, had similar experiences on hours worked, and had similar limited responsibilities. (*Id.* at ¶ 15).

13.    Orry Combs[4] worked as a Manager for SnS before August 2014 at retail restaurants located in Jacksonville and St. Augustine, Florida. (**Exhibit J**, ¶ 2). As a Manager, Combs was very familiar with all the job duties of the restaurant's hourly employees. (*Id.* at ¶ 4). Combs spent on average 90% of his time performing the same job duties as these hourly employees. (*Id.* at ¶ 5). His performing these hourly job duties were essential for the success of the restaurant. (*Id.* at ¶ 6). He did not have the authority to hire or fire employees, and only played a limited role in interviews. (*Id.* at ¶ 8). He had no role in making any determinations regarding other employees' pay, raises, benefits, or promotions. (*Id.* at ¶ 9). As a Manager, he could not deviate from any of SnS's policies or procedures. (*Id.* at ¶ 11). On average, he worked 60 hours per week without receiving overtime pay. (*Id.* at ¶ 13). While working at his SnS locations, Combs interacted with other Managers, and from his observations and conversations they also spent the majority of their time performing hourly employee work, had similar experiences on hours worked, and had similar limited responsibilities. (*Id.* at ¶ 14).

14.    Brittany Hand worked as a Manager for SnS from approximately late 2011 through late 2014 at a retail restaurant located in Marion, Illinois. (**Exhibit K**, ¶ 2). As a

---

[4] *See* fn. 3, *supra*.

Manager, Hand was very familiar with all the job duties of the restaurant's hourly employees. (*Id.* at ¶ 4).  Hand spent on average 75% of her time performing the same job duties as these hourly employees.  (*Id.* at ¶ 5).  Her performing these hourly job duties were essential for the success of the restaurant.  (*Id.* at ¶ 6).  She did not have the authority to hire or fire employees, and only played a limited role in interviews.  (*Id.* at ¶ 8).  She had no role in making any determinations regarding other employees' pay, raises, benefits, or promotions.  (*Id.* at ¶ 9).  As a Manager, she could not deviate from any of SnS's policies or procedures.  (*Id.* at ¶ 11).  On average, she worked 60-70 hours per week without receiving overtime pay.  (*Id.* at ¶ 13).  While working at her SnS location, Hand interacted with other Managers, and from her observations and conversations they also spent the majority of their time performing hourly employee work, had similar experiences on hours worked, and had similar limited responsibilities.  (*Id.* at ¶ 15).

15.    Jennifer Piccolomini worked as a Manager for SnS from approximately mid-April 2016 through mid-October 2016 at retail restaurants located in Akron, Streetsboro, and Brunswick, Ohio.  (**Exhibit L**, ¶ 2).  As a Manager, Piccolomini was very familiar with all the job duties of the restaurant's hourly employees.  (*Id.* at ¶ 4).  Piccolomini spent on average 95% of her time performing the same job duties as these hourly employees.  (*Id.* at ¶ 5).  Her performing these hourly job duties were essential for the success of the restaurant.  (*Id.* at ¶ 6). She did not have the authority to hire or fire employees, and only played a limited role in interviews.  (*Id.* at ¶ 8).  She had no role in making any determinations regarding other employees' pay, raises, benefits, or promotions.  (*Id.* at ¶ 9).  As a Manager, she could not deviate from any of SnS's policies or procedures.  (*Id.* at ¶ 11).  On average, she worked 60-70 hours per week without receiving overtime pay.  (*Id.* at ¶ 13).  While working at her SnS location, Piccolomini interacted with other Managers, and from her observations and

9

conversations they also spent the majority of their time performing hourly employee work, had

similar experiences on hours worked, and had similar limited responsibilities.  (*Id.* at ¶ 15).

      16.     Nearly every aspect of how a SnS restaurant operates is controlled and governed

by corporate policies and procedures.  (Exhibits C - L, ¶ 7).

      17.     The Plaintiff is seeking court approved notice to be sent to the following proposed

collective class under § 216(b) of the FLSA:

> All persons who worked, or will work during the liability period, as Managers (or
> persons with similar job duties) for Defendant at all corporate owned retail
> restaurants at any time from three years prior to the filing of this Complaint
> (hereafter the "FLSA Collective") for all locations except ones within the St.
> Louis Group Market.

(Complaint, ¶ 25).

## III.    Argument

**A.    The Lenient Standard for Conditional Certification:**

      "Employees alleging that they have been denied required overtime compensation may

bring a suit on their own behalf and on behalf of 'other employees similarly situated,' in a

'collective action' under 29 U.S.C. § 216(b).  *North v. Bd. of Trustees of IL State Univ.*, 676 F.

Supp. 2d 690, 694 (C.D. Ill. 2009) (McDade, J.).  "Unlike Rule 23 class actions, plaintiffs to a

FLSA collective action must 'opt-in' to be parties to the suit, and they are not bound by the

court's determination if they do not opt-in.  *Id.* (citing *Woods v. New York Life Ins. Co.,* 686 F.2d

578, 580 (7th Cir.1982).  "In addition, unlike Rule 23, § 216(b) does not provide for court-

ordered notice.  However, the Supreme Court has held that a court may order notice to potential

plaintiffs in 'appropriate cases.'"  *Id.* (citing *Hoffmann–La Roche, Inc. v. Sperling, et al.,* 493

U.S. 165, 169, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989).  "The Seventh Circuit has held that, once

the suit is filed, plaintiffs should consult with defense counsel before contacting other potential

plaintiffs, and that the district court has the power to manage the notice to other plaintiffs." *Id.*

The Seventh Circuit has not provided any guidance on how a district court should

exercise its discretion in the notice process under § 216(b) of the FLSA. *Id.* But, other courts of

appeal have endorsed a two-step approach regarding class certification under §216(b) of the

FLSA. *See Cameron-Grant v. Maxim Healthcare Servs., Inc.,* 347 F.3d 1240, 1243 n. 2 (11th

Cir. 2003); *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001). This

Court in *North* utilized this two-step approach. *Id.* This is in-step with numerous other courts in

Illinois. *See Betancourt v. Maxim Healthcare Services, Inc.*, No. 10 cv 4763, 2011 WL 1548964,

at *4 (N.D. Ill. April 21, 2011)(J. Gilbert); *Petersen v. Marsh USA, Inc.*, No. 10 cv 1506, 2010

WL 5423734, at *5 (N.D. Ill. Dec. 23, 2010)(J. Kennelly); *Howard v. Securitas*, No. 08 cv 2746,

630 F. Supp. 2d 905 2009 WL 140126, at *5 (N.D. Ill. Jan. 20, 2009)(J. Gottschall) (adopting

two-stage FLSA process, noting "[T]he court looks for no more than a 'minimal showing' of

similarity."); *Shiner v. Select Comfort Corp.*, 2009 WL 4884166, at *2, (N.D. Ill. Dec. 9, 2009);

*Russell v. Illinois Bell Tel. Co*., 575 F. Supp.2d 930, 933 (N.D. Ill. 2008); *Olmsted v. Residential

Plus Mortgage Corp.*, No. 08 cv 142, 2008 WL 5157973, at *4 (N.D. Ill. Dec. 9, 2008) (J.

Leinenweber); *Jirak,* 566 F. Supp. 2d at 847 (J. Castillo) (collecting cases); *Bastian v. Apartment

Invest. and Mgmt. Co.*, No. 07 cv 2069 (N.D. Ill. Sept. 17, 2007) (J. Gettleman).

The Plaintiff's factual allegations warranting conditional certification fall under a very

lenient standard.

> Under the two-step approach, a court must first determine whether the plaintiff
> has made out a "modest factual showing" that she and the members of the
> proposed collective action are "similarly situated." This means that the plaintiff
> must put on some evidence that she and the members of the collective action were
> "victims of a common policy or plan that violated the law."

*North*, 676 F. Supp.2d. at 694.  Thus, "a plaintiff need only demonstrate a factual nexus that

binds potential members of a collective action together." *Ervin v. OS Rest. Serv., Inc*., 2009 WL

1904544, at *3 (N.D. Ill. July 1, 2009); rev'd in part on other grounds *Ervin v. OS Rest. Serv.,*

*Inc.,* 632 F.3d 971 (7th Cir. 2011).  The "modest factual showing" requirement of the first step

"is **not a stringent standard**. . ."  *Gambo*, 2005 WL 3542485, at *4 (emphasis added) (citing

*Garza v. Chicago Trans. Auth.*, 2001 WL 503036, at *2 (N.D.Ill. May 8, 2001)).

Only after the completion of discovery, and at the second stage, does the Court consider

evidence regarding lack of similarity among the class members.

> At the second step, the court may revisit the "similarly situated" determination
> made under step one, and determine, with the benefit of evidence gleaned from
> discovery, whether the members of the collective action are truly similarly
> situated. The conditional certification may be revoked at that time if the court
> determines that the members of the collective action are not similarly situated.

*North*, 676 F. Supp.2d at 695 (citations omitted).

This Court has stated that a plaintiff cannot rely on simple allegations that the FLSA has

been violated.  But, instead, should present an "affidavit, declaration, or other support beyond

allegations in order to make a minimal showing of other similarly situated employees subjected

to a common policy."  *Id.* at 697.   Other Illinois District courts agree finding that allegations in

the complaint, supported with sworn testimony, are sufficient to meet the "modest factual

showing" requirement for conditional certification.  *See*, *Howard v. Securitas Security Services,*

*USA Inc.*, 2009 WL 140126, at *6 (N.D.Ill. Jan. 20, 2009) (allegations in complaint plus sworn

statements met modest factual showing requirement for conditional certification); *Garcia v.*

*Salamanca Group, Ltd.,* 2008 WL 818532, *2 (N.D.Ill. March 24, 2008) (one affidavit sufficient

to meet modest factual showing requirement for conditional certification); *Gambo v. Lucent*

*Techs, Inc.*, 2005 WL 3542485, at *1-3 (N.D.Ill. Dec. 22, 2005) (allegations in complaint

supported by three affidavits sufficient to meet modest factual showing requirement for

conditional certification); *Garza v. Chicago Trans. Auth.*, 2001 WL 503036, at *3 (N.D.Ill. May

8, 2001) (submitting some evidence outside the complaint was sufficient to meet modest factual

showing requirement for conditional certification).

**B.      Plaintiff has Met this Lenient Standard:**

The Plaintiff has presented a "modest factual showing" that all Managers were "victims

of a common policy or plan" that violated the FLSA.  This common policy or plan is SnS's

uniform companywide policy to treat all Managers as exempt from overtime pay under the

FLSA.  All Mangers are denied overtime pay for hours worked in excess of forty per workweek.

Therefore, this fact alone demonstrates that all managers are victims of this same allegedly

illegal policy.  In addition to admitted same or similar policy, the Plaintiff has presented this

Court with nine Manager declarations who worked in six different states.  This testimony

confirms SnS's written uniform policy and supports the Plaintiff's allegations.  Indeed, SnS's

companywide job description demonstrates its understanding that all Managers are the same

regardless of location, experience, supervision, *etc.*  The Manager testimony also reflects the

same actual job duties, working overtime hours, and denial of overtime pay.   All of SnS's

operations at restaurants are controlled by corporate wide policies, leaving no individual

discretion among Managers.  Finally, the same human resource department manages all

employee policies.   Plaintiff has more than met the modest factual showing requirement in this

District.

Under first stage analysis, misclassification cases are even more suited for conditional

certification.  In *Olmsted v. Residential Plus Mortg. Corp.*, No. 08 C 142, 2008 WL 5157973

(N.D. Ill. Dec. 9, 2008), the plaintiff sought conditional certification for a group of allegedly

misclassified employees.  The court found that some additional evidence supporting plaintiff's

allegations of overtime denial will suffice.

> At this stage, Plaintiff has met the lower threshold burden of showing that potential class members are similarly situated. In support of her motion, Plaintiff submitted an e-mail from a supervisor implying that Defendants do not pay overtime wages and affidavits from other employees with the same or similar jobs who state that they were refused overtime pay. Plaintiff need not show that potential class members performed identical duties to meet this standard, and conditional certification may be appropriate even if differences exist between their job titles, functions, or pay.

Id. at *3.  Like *Olmsted*, Plaintiff offers SnS's uniform policy that all Managers be denied

overtime pay and perform the same job duties as well as nine supporting declarations.

In another misclassification case, the court stated the following when granting conditional

certification:

> [T]he plaintiffs contend that they were all subject to the common policy of being misclassified as independent contractors and consequently, were subject to the same FLSA violations in that they were denied overtime wages . . . They have submitted declarations in which each states that they worked as Comcast cable technicians, they regularly worked 80 or more hours per week with no overtime pay, they had to pay for their own trucks, including gas and repairs, they had to pay for their own Nextel phone including service, they frequently worked 12– hour days, and performed cable disconnection or installation services.

*Perez v. Comcast*, No. 10 C 1127, 2011 WL 5979769, at *1 (N.D. Ill. Nov. 29, 2011).  Again,

the Plaintiff here has presented the same supporting testimony regarding hours worked and

similar job duties.  A plaintiff providing "evidence that they and putative notice recipients shared

common job duties and qualifications" and were subject to the same companywide FLSA

exempt classification is sufficient to meet the "minimal showing necessary for conditional

certification."  *Petersen v. Marsh USA, Inc.*, No. 10 C 1506, 2010 WL 5423734, at *5 (N.D. Ill.

Dec. 23, 2010).

**C.      Defendant Cannot Argue Merits, Lack of Similarity, or Affirmative Defenses:**

Defendants often attempt to defeat conditional certification by attacking the credibility of

the supporting testimony, or attempting to argue dissimilarity among the class.  Doing so is

premature at this stage.  Any question that "speaks to the merits of his FLSA claims rather than

the appropriateness of conditional certification" is premature.  *Brand v. Comcast Corp.*, No. 12

CV 1122, 2012 WL 4482124, at *7 (N.D. Ill. Sept. 26, 2012).  "The only question at this stage is

whether [plaintiff] has made a sufficient showing demonstrating that he and other similarly

situated employees were victims of a common policy or plan that violated the FLSA."  *Id.*   Also,

"[c]ourts have consistently held that questions about the applicability of FLSA exemptions are

typically not addressed during the first step of the conditional certification inquiry."  *Rottman v.*

*Old Second Bancorp, Inc.,* 735 F.Supp.2d 988 (N.D.Ill.2010).  Inquiry into the different positions

and tasks of the putative plaintiffs is premature at this stage.  *Smallwood v. Illinois Bell*

*Telephone Co.,* 710 F.Supp.2d 746 (N.D.Ill.2010).  "[D]efendants' arguments about the factual

basis for potential class members' individual entitlement to exemptions are thus insufficient to

defeat conditional certification."  *Kelly v. Bank of Am.*, No. 10 C 5332, 2011 WL 4526674, at *3

(N.D. Ill. Aug. 30, 2011).

**D.      Plaintiff's Proposed Notice Should be Approved:**

Once the Court has conditionally determined that the proposed class members are

similarly situated, it is appropriate for the Court to order that notice be given.  *North*, 676 F.

Supp.2d at 698 (C.D. Ill. 2009).  So long as the notice does not appear to represent the Court

inviting the person to join, the Plaintiffs have discretion to prepare the notices as they see fit so

long as the information is fair and accurate.  *Id.*  Indeed, case law suggests that Plaintiff is not

necessarily required to seek the court's leave prior to sending notices to class members.  *See,*

*Garcia v. Salamanca Group, Ltd.,* 2008 WL 818532, *2 (N.D.Ill. March 24, 2008) (citing

*Heitmann v. City of Chicago*, 2004 WL 1718420 (N.D.Ill. July 30, 2004)).  The Seventh Circuit

has even found that a district court cannot prohibit a plaintiff, *sua sponte*, from sending notice to

class members.  *Woods v. New York Life Ins. Co.*, 686 F.2d 578, 580 (7th Cir. 1982).  The *Woods*

opinion reveals the Seventh Circuit's intent pertaining to the deference plaintiffs should be

afforded in this notice process and the content of the notice.

Regardless, the Northern District regularly exercises discretionary authority over the

notice process.  *Garcia*, 2008 WL 818532, at *2.  For all practical purposes, the realities of

adversarial litigation require the court's involvement.  It would be a rare circumstance where a

defendant voluntarily provides plaintiff the contact information for all class members without

court order.  If a plaintiff is successful under the first stage in the conditional certification

process, the defendant is required to produce that information.  However, when exercising this

discretionary authority over the notice process, the district court should still adhere to the

principles set forth in *Woods* and *Garcia*, *supra*.  The Plaintiffs should have discretion regarding

the notice's content so long as it is fair and accurate.

In *King v. ITT Continental Baking Co.*, 1986 WL 2628 (N.D.Ill. Feb. 18, 1986), while

approving notice in an FLSA claim, the district court first noted that in general, "…**plaintiffs**

**should be allowed to use the language of their choice in drafting the notice**," since after all,

the notice is not from the Court, "…**but is instead a communication from the plaintiff and**

**plaintiffs' counsel** to other prospective class members."  *Id.* at *3. (emphasis added).  The

Plaintiff in this case should be allowed to use the language of her choice because the notice is not

a communication from the Defendant, or this Court, but is instead a communication from

Plaintiffs and Plaintiffs' Counsel.  *Id.*  "[A]lthough the Court has both the power and the duty to

16

ensure that the notice is fair and accurate, **that power should not be used** to alter plaintiffs' proposed notice unless such alteration is **necessary**." *Id.* (emphasis added). More so, courts should not permit alterations if such amendments would unreasonably "chill" participation in the action. *Id.*

The form of Plaintiff's proposed Notice and Consent Form, attached as **Exhibits M** and **N**, meets this "fair and accurate" standard. Any concerns this Court addressed in *North* regarding the proposed notice, do not exist here. *North*, 676 F.Supp.2d at 699. Numerous district court judges in the Northern District of Illinois have approved similar notice and consent forms containing substantially similar language as the forms proposed here. The Plaintiff also requests that this Court require production of last known phone numbers for any notices returned as undeliverable. Courts have agreed this is appropriate under a protective order limiting the use of that information to tracking purposes. *Brand v. Comcast Corp.*, No. 12 CV 1122, 2012 WL 4482124, at *9 (N.D. Ill. Sept. 26, 2012).

**WHEREFORE**, the Plaintiff respectfully requests that this Court issue an order for the following:

a.  Granting Plaintiff's Motion for conditional class certification under § 216(b) of the FLSA and permitting a Court approved notice (Exhibits M and N) to be sent to all of Defendant's employees who performed work as a "Manager" in all Group Markets (excluding the St. Louis Group Market) for three years from the filing of this Motion;

b.  Directing the Defendant to provide a list of names of these persons within fourteen (14) days of the Court's order with their last known home mailing addresses and phone numbers, all in a workable electronic format for mailing purposes;

     c.      Provide the last four digits of social security numbers for all class members whose mailed notices are returned undeliverable so Plaintiff can locate a viable mailing address; and

     d.      Granting such other relief the Court deems just and proper.

Respectfully Submitted,





*/s/ Brendan J. Donelon*
Brendan J. Donelon, MO 43901
*Lead Counsel*
420 Nichols Road, Suite 200
Kansas City, Missouri 64112
Tel:    (816) 221-7100
Fax:    (816) 709-1044
brendan@donelonpc.com

Attorneys for Plaintiff

Daniel W. Craig, IL 6230845*
6614 Clayton Road, #320
St. Louis, Missouri 63117
Tel:    (314) 297-8385
Fax:    (816) 709-1044
dan@donelonpc.com

*Admission application coming soon.

Certification of Word Count

Pursuant to Local Rule 7.1(B)(4)(b)(1), this legal memorandum contains 5,801 words as determined by 2017 MS Word.

Certificate of Service

I hereby certify that on <u>May 1, 2017</u> the above pleading was sent via this Court's CM/ECF system to the email addresses to the following counsel of record:

| | |
|---|---|
| David K. Haase | Patricia J. Martin |
| Catherine S. Lindemann | Andrew C. Johnson |
| **Littler Mendelson, PC** | LITTLER MENDELSON, P.C. |
| 321 North Clark Street, Suite 1000 | One Metropolitan Square |
| Chicago, IL 60654 | 211 North Broadway, Suite 1500 |
| 312.795.3286 | St. Louis, MO 63102 |
| 312.276.4982 fax | Telephone: 314.659.2000 |
| DHaase@littler.com | Facsimile: 314.659.2099 |
| clindemann@littler.com | pmartin@littler.com |
| | ajohnson@littler.com |

Attorneys for Defendant.